UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

RARITAN BAYKEEPER, INC.,

        Plaintiff,

v.

PRATT PAPER (NY) INC.,

        Defendant.

---

Case No. 1:20-cv-02962

~~(PROPOSED)~~
CONSENT DECREE

---

    WHEREAS, Plaintiff Raritan Baykeeper, Inc., d/b/a NY/NJ Baykeeper ("Baykeeper") is a not-for-profit environmental organization, organized under the laws of the state of New York, with its principal place of business in Hazlet, New Jersey;

    WHEREAS, Defendant Pratt Paper (NY) Inc. ("Pratt") is a corporation incorporated under the laws of the State of Delaware and owns and operates a paper-recycling and paper-manufacturing facility at 4435 Victory Boulevard, Staten Island, NY 10314 (the "Facility");

    WHEREAS, Pratt discharges stormwater runoff from the Facility into the waters of the United States, including the Arthur Kill, a navigable water of the United States;

    WHEREAS, the Facility primarily operates under Standard Industrial Classification ("SIC") Codes of 2631, 2652, 2671, and 5093, and therefore discharges of stormwater associated with activities at the Facility can be considered for coverage under the General Permit for the Discharge of Stormwater Associated with Industrial Activity ("General Permit") issued by the New York State Department of Environmental Conservation ("DEC"), Permit No. GP-0-17-004;

    WHEREAS, Pratt has applied for and obtained coverage under the General Permit and was issued General Permit identification number NYR00C124;

    WHEREAS, Baykeeper sent a notice of intent to sue Pratt (the "Notice Letter") on March 5, 2020, and filed this action on July 4, 2020, alleging violations of 33 U.S.C. §§ 1311(a) and 1342 of the Clean Water Act ("CWA") and seeking declaratory and injunctive relief, civil penalties, and reasonable attorneys' fees and costs;

    WHEREAS, Baykeeper alleged in its complaint (the "Complaint") and in its Notice Letter that Pratt violated and continued to violate CWA Section 33 U.S.C. §§ 1311(a) and 1342 by, *inter alia,* failing to comply with the conditions of the General Permit;

WHEREAS, DEC and Pratt are negotiating an Administrative Consent Order in DEC File No. R2-20200716-175 under which Pratt will be assessed an administrative penalty;

WHEREAS, pursuant to the Administrative Consent Order and in consultation with Baykeeper, Pratt has conducted a full assessment of the stormwater infrastructure at the Facility and produced an Engineering Report and Corrective Plan that will include upgrades to stormwater pollution prevention measures;

WHEREAS, without any concession or admission by Pratt that it has violated the Clean Water Act, or any concession or admission by Baykeeper that Pratt's implementation of the measures listed below will necessarily prevent all discharge of polluted stormwater or will assure compliance with the terms and conditions of the General Permit, Baykeeper and Pratt (collectively, "the Parties" or individually "Party") believe that the measures provided under the Corrective Plan, combined with the other measures that Pratt is taking under its SWPPP, are reasonably calculated to achieve compliance with the Permit, the CWA, and New York law, and agree that it is in their mutual interest to resolve this matter without the taking of evidence or findings of fact or law, and the Parties would like to avoid prolonged and costly litigation;

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice and the United States Environmental Protection Agency for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c); and

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Pratt of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

**IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:**

**I.     DEFINED TERMS**

The defined terms set forth in the foregoing recitals are hereby incorporated into the body of this Consent Decree and are made a part hereof.  Terms used in this Consent Decree that are defined in the CWA and its implementing regulations shall have the meanings assigned to them in the Acts or such regulations, unless otherwise provided in this Consent Decree.  In addition, the following terms used in this Decree have the meaning set forth below:

1. Effective Date: the date upon which this Consent Decree is entered by the Court.

2. Term of this Consent Decree: the period beginning on the Effective Date and ending three (3) years from the date of the Effective Date.

3. The Facility: the real property associated with the paper recycling and paper manufacturing facility located at 4435 Victory Boulevard, Staten Island, NY 10314.

4. The Agencies: the United States Environmental Protection Agency and the United States Department of Justice.

5. Pratt: Pratt Paper (NY) Inc.

6. SWPPP: Pratt's Stormwater Pollution Prevention Plan. Attached hereto as Exhibit A.

7. Administrative Consent Order: The consent order executed by DEC and Pratt in DEC File No. R2-20200716-175.

8. Engineering Report: An engineering report prepared by an engineer licensed to practice in New York State that evaluates the adequacy of and proposed alterations to Pratt's water quality pond system that discharges through Outfall 001 of the Facility. Attached hereto as Exhibit B.

9. Corrective Plan: The corrective action plan documenting the measures which have been taken or are to be taken, and which the Parties agree are reasonably calibrated to eliminate or minimize exceedances of benchmark concentrations for sector-specific benchmark parameters of stormwater discharges associated with the Facility. Attached hereto as Exhibit C.

## II. JURISDICTION AND VENUE

10. **Jurisdiction.** Baykeeper asserts, and Pratt does not contest for purposes of this Consent Decree only, that jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction), that an actual, justiciable controversy exists between Baykeeper and Pratt, and that the requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a). Pratt does not admit jurisdiction or waive any defense for purposes of any other action brought in any court or tribunal.

11. **Venue.** Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the alleged events giving rise to this action are alleged to have occurred at the Facility and in the Arthur Kill and New York Harbor watersheds, navigable waters of the United States, that are located within this judicial district.

12. **Consent.** Pratt consents to the Court's jurisdiction to enforce this Consent Decree, and that venue in this district is proper for such enforcement.

## III. COMPLIANCE WITH THE GENERAL PERMIT

13. **SWPPP Implementation**. The current SWPPP for the Facility is attached to this Consent Decree as Exhibit A. Pratt will implement the attached SWPPP at the Facility in compliance with the terms of the General Permit, which is hereby incorporated into this Consent Decree, and the Clean Water Act. A failure to adhere to the SWPPP is a violation of this Consent Decree.

14. **Implementation Report.**  Pratt shall provide Baykeeper with an Implementation Report, prepared by a qualified stormwater professional, attesting to implementation of measures required by the Corrective Plan, attached hereto as Exhibit C, within thirty (30) days of completion of the last measure required under the Corrective Plan.  The Report shall include:
    a. A revised SWPPP, incorporating the final updates to stormwater controls at the Facility and removing temporary provisions (if any);
    b. A summary of any newly-adopted management or housekeeping practices;
    c. Photographs of all structural control measures added or improved;
    d. A certification that the professional has visited the Facility in the month prior to submission of the Report;
    e. A certification that, during the professional's last visit, all structural measures described in the revised SWPPP were in good working order, and all housekeeping measures appeared to be taking place.

15. **Schedule of Compliance – Baykeeper's Covenant not to Sue.**  The General Permit requires permittees to prepare and fully implement a SWPPP before they are eligible for coverage under the General Permit.  In deference to practical considerations and in light of Pratt's continuing good faith efforts to come into full compliance with the Clean Water Act, the Consent Decree allows a three (3) month period after the Effective Date of the Consent Decree for Pratt to complete all structural modifications pursuant to the Corrective Plan.  Provided that the structural modifications described in the Corrective Plan are completed on schedule, Baykeeper hereby covenants not to prosecute Pratt's failure to fully implement the Corrective Plan during this three (3) month period.

16. **SWPPP Amendments.**  If, during the Term of this Consent Decree, Pratt amends the SWPPP, or is required to amend the SWPPP for any reason including but not limited to the reasons enumerated in the General Permit, Pratt shall provide written notice to Baykeeper within fourteen (14) days of the amendment.

17. **Implemented Storm Water Controls.**  Pratt shall maintain in good working order all stormwater collection and treatment systems currently installed or to be installed pursuant to the Corrective Plan.

IV. **MONITORING PROGRAM**

18. **Monitoring.** Pratt agrees to perform the following monitoring described herein during the Term of this Consent Decree.  Nothing herein is intended to relieve Pratt of any monitoring required under the General Permit.

19. **Sampling Point(s).** The sampling point(s) shall be the outfall identified in the SWPPP, as may be modified in any amendments to the SWPPP in accordance with Section III.

20. **Sampling Frequency.** Pratt will sample and analyze stormwater discharges from one qualifying storm event per quarter, provided that such a qualifying storm event, as defined in the General Permit, occurs.

21. **Sampling Methodology.** Pratt will take samples for applicable Sector-specific benchmark pollutants at the sampling point(s) in a manner that is consistent with the requirements and protocols set forth in the General Permit, including applicable Sector-specific requirements. Pratt may report this sampling as part of the stormwater monitoring required by the General Permit.

22. **Recordkeeping.** Pratt will comply with the reporting and recordkeeping requirements of the General Permit. Pratt shall maintain written documentation at the Facility describing all inspections and assessments required under the General Permit or this Consent Decree for a five (5) year period beginning on the Effective Date.

23. **Results sent to Plaintiff.** No later than February 1 of each year during which this Consent Decree is in effect or the end of the Term of the Decree, whichever is sooner, and beginning February 1, 2022, Pratt will send to Baykeeper a copy of those records that Pratt is required to keep of required inspections or sampling under the General Permit performed during the prior calendar year (in the case of records for 2021, those required in regards to inspections or sampling occurring after the Effective Date in 2021), unless earlier reporting of an exceedance or violation is required pursuant to Section V of this Consent Decree.

24. **Provision of Documents to Baykeeper.** During the Term of this Consent Decree, Pratt shall provide Baykeeper with copies of any nonprivileged documents or correspondence related to discharges of stormwater from the Facility or compliance with the General Permit submitted to or received from any governmental agency, including but not limited to the Agencies, the DEC, and the New York City Department of Environmental Protection. This includes, but is not limited to the following (to the extent submitted to or received from any governmental agency):
    a. Annual Reports;
    b. Inspection Reports;
    c. Monitoring or sampling data;
    d. Revisions to the SWPPP;
    e. Reports of spills or other incidents that may result in discharge of pollutants to a waterbody; and
    f. Documents and correspondence related to re-registration or termination of NPDES permit coverage at the Facility.

25. **Inspections.** Pratt agrees to grant reasonable site access to consultants acting on behalf of Baykeeper, to inspect the outdoor areas of the Facility for compliance with the General Permit and the terms of this Consent Decree. Baykeeper and Pratt will negotiate in good faith a separate agreement regarding safety and security protocols, required insurance, protection from disclosure by Baykeeper of trade secrets or confidential business information that Pratt may identify as such during any such inspection, and other terms concerning Baykeeper's access to the Facility; any consultant of Baykeeper seeking to inspect the Facility will agree to be bound by the terms of such agreement. Access will be provided up to once per quarter (four times per year) during the first year after the Effective Date, and up to twice annually thereafter

during the Term of this Consent Decree. Site visits shall be conducted only between the hours of 8 a.m. and 5 p.m. Monday through Friday, and not on holidays or if the Facility is closed or shut down for renovation or maintenance, and not when such a visit would be unsafe due to inclement weather or otherwise. Baykeeper shall give fourteen (14) days' notice of the earliest date on which it desires to conduct such a visit, and Pratt will accommodate Baykeeper on such date or as soon thereafter as reasonably possible, taking into account the above conditions regarding site visits. Baykeeper's consultants may collect samples of stormwater discharges, if any qualified stormwater discharges under the Permit happen to be occurring during the site visit, and shall provide Pratt with a split sample upon request. Baykeeper's consultants may take photographs of stormwater control features and other items that are directly related to stormwater compliance at the Facility. Baykeeper's consultants shall not take photographs of indoor manufacturing equipment or any items that are considered trade secrets or confidential business information without Pratt's express written consent. Should a consultant of Baykeeper identify what it reasonably believes to be any material noncompliance with the General Permit or the terms of this Consent Decree, Pratt will provide the opportunity for one (1) additional site visit per month until the Facility is in material compliance with the General Permit and this Consent Decree, and the Parties will follow the procedures outlined for corrective action in Section V. Baykeeper will provide Pratt with documentation of any alleged non-compliance observed by Baykeeper within fourteen (14) days of the later of the site visit or Baykeeper's receipt of any relevant information that Baykeeper requested during the site visit. Pratt does not through this process admit that any allegation by Baykeeper of non-compliance is determinative that a violation has in fact has occurred, and Pratt retains the right to contest any alleged violations.

## V.   EXCEEDANCES AND VIOLATIONS

26. **Reporting Benchmark Exceedances and Numeric Effluent Limitation Violations.** The Parties acknowledge that the General Permit does not impose any numeric effluent limitations for the Facility. Notwithstanding the annual reporting schedule set forth in Section IV of this Consent Decree, if at any point during the Term of this Consent Decree the laboratory analytical results of any sample for any parameter collected in accordance with the requirements of the General Permit exceeds any applicable benchmark monitoring cutoff concentration established in the General Permit, Pratt shall report the event to Baykeeper and provide the analytical results within ten (10) days of receiving the analytical results.

27. **Corrective Action.** Where a benchmark monitoring cutoff concentration is exceeded, or when Baykeeper provides Pratt notice of noncompliance with the General Permit or this Consent Decree, Pratt shall review whether any responsive actions are needed and take such actions as appropriate, including re-evaluating structural and non-structural BMPs and considering additional BMPs aimed at reducing pollutant levels observed in samples. Within thirty (30) days of discovering such exceedance or non-compliance, Pratt shall provide Baykeeper with a Memorandum containing the following information:

    a. Identification of any constituent that experienced an exceedance;
    b. Explanation of the possible cause(s) and/or source(s) of the exceedance or noncompliance; and
    c. Explanation of Pratt' planned responsive actions, if any.

Baykeeper shall have thirty (30) days to comment on Pratt's planned responsive actions, if any. Pratt shall complete all responsive actions, if any, within twelve (12) weeks of discovery, provided that Pratt may request, and Baykeeper will not unreasonably withhold consent to, an extended timeline for completion where further time is reasonably necessary under the circumstances. Any concurrence or failure to object by Baykeeper shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's stormwater into compliance with technology-based standards requiring industrial stormwater discharges to be controlled to the level achievable by the best available technology economically available. So long as Pratt takes Corrective Action in accordance with this Paragraph, an exceedance or alleged noncompliance is not a violation of this Consent Decree.

## VI. PAYMENTS

28. **Environmental Benefit Payment ("EBP")**. In lieu of any payment that could have been assessed as a penalty if the matter were tried, Defendant shall pay the sum of $25,000 to ioby, P.O. Box 4668 #74253, New York, NY 10163-4668 (the "EBP Recipient"), for use on projects relating to the reduction, mitigation, and/or remediation of the effects of stormwater pollution or environmental restoration of, or other benefit to, the Arthur Kill or New York Harbor watersheds. Pratt will make the EBP by ACH Transfer using the method and instructions as mutually agreed by the Parties. Defendant shall concurrently notify Baykeeper that payment has been sent, in writing. None of this payment shall be disbursed to Baykeeper.

29. **Stipulated Additional EBP**. Should Pratt fail to provide information or any required documentation to DEC or Baykeeper by the deadlines required by the General Permit or this Consent Decree, Baykeeper shall provide Pratt with prompt written notice pursuant to Section XI. Pratt shall have seven (7) days after receipt of such notice to correct any such alleged violation (the "Cure Period"), and if Pratt corrects the alleged failure within the Cure Period, it shall not be deemed to be in violation of this Consent Decree. If such failure is not corrected within the Cure Period, Pratt shall make a payment of one-thousand dollars ($1,000) for each instance of failure to provide information and/or documentation and/or missed deadline (the "Additional EBPs"). Any disputes over any such alleged non-compliance shall be subject to the Dispute Resolution Procedure set forth in Section X. Additional EBPs shall be made to the EBP Recipient by ACH Transfer using the method and instructions as mutually agreed by the Parties. Payment of each additional amount shall be due fourteen (14) days following the end of the Cure Period. Pratt shall concurrently notify Baykeeper, in writing, each time an Additional EBP is made. None of these payments shall be disbursed to Baykeeper.

30. **Fees, Costs, and Expenses.** Pratt shall pay a sum of seventy-two thousand dollars ($72,000) as full and complete satisfaction of Baykeeper's claims for attorneys' fees and costs incurred to date, including investigative and expert costs. The payment shall be sent to Baykeeper's attorney by ACH Transfer using the method and instructions as mutually agreed by the Parties, within seven (7) business days of the Effective Date. Defendant shall concurrently notify Baykeeper that payment has been sent. Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Baykeeper.

31. **Compliance Oversight Fees and Costs.** Baykeeper will incur costs in order to monitor Pratt's compliance with this Consent Decree, including but not limited to costs incurred by Baykeeper or their counsel or consultants to conduct site inspections, collect or review water quality sampling data, review annual reports, and discuss with representatives of Pratt any potential changes to compliance requirements, preparation and participation in mediation, and similar activities. To help defray these costs, Pratt agrees to pay Baykeeper's fees and costs in an amount not to exceed twelve-thousand dollars ($12,000) through the Term of this Consent Decree. Such payment shall be deemed complete satisfaction of any amounts due from Pratt to Baykeeper for reimbursement of legal fees, consulting or expert fees and other out of pocket costs, incurred in regards to Baykeeper's monitoring of this Consent Decree. The payment shall be sent to Baykeeper's attorney by ACH Transfer using method and instructions as mutually agreed by the Parties, within seven (7) business days of the Effective Date. Defendant shall concurrently notify Baykeeper that payment has been sent. Payments will be deposited in Super Law Group's IOLA Trust Account and held in escrow for the benefit of Baykeeper. Baykeeper or its attorneys shall present to Pratt an invoice for any payment they propose to take from this sum to cover compliance oversight fees and costs. Pratt shall have two weeks from receipt of any such invoice to object to the sum claimed. If Pratt does not object, Baykeeper's attorneys shall draw down the trust account to pay the proposed sum. If Pratt objects, the Parties shall follow the Dispute Resolution Procedure set forth in Section X. Any funds not used during the Term of this Consent Decree shall be refunded to Pratt within thirty (30) days of the expiration of the Term of this Consent Decree.

VII. **EFFECT OF DECREE**

32. **Baykeeper's Release of Liability.** Upon Court approval and entry of this Consent Decree, Baykeeper covenants not to sue and releases Pratt, Pratt Industries, Inc., Pratt Corrugated Holdings, Inc., and their parent companies and direct and indirect subsidiaries, along with all of those companies' shareholders, members, managers, officers, directors, employees, and agents from any and all claims, causes of action, or liability related to stormwater at the Facility under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, or any other claim or relief alleged or that could have been alleged prior to the Effective Date. This Paragraph does not constitute a waiver or release of any claims relating to the enforcement of this Consent Decree.

33. **Reservation.**  Baykeeper does not waive its right to bring a future action for injunctive or declaratory relief, penalties, and attorneys' fees and costs based on stormwater discharges that occur after the Term of this Consent Decree, provided however that the Parties acknowledge that the measures required under this Consent Decree are reasonably calculated to achieve compliance with the Clean Water Act and the General Permit and to remedy the alleged violations contained in the notice letter and complaint.

34. **Pratt's Releases of Liability.**  Pratt releases and discharges Baykeeper and its representatives, assigns, agents, employees, officers, attorneys, and consultants, including those who have held positions in the past, from any and all claims, liability, demands, penalties, costs, and causes of action of every nature arising before the Effective Date which concern or are connected with this action.

35. **Compliance with Law.**  Baykeeper does not by consent to the Decree warrant or aver in any manner that Pratt's compliance with this Consent Decree shall constitute or result in compliance with federal or state law or regulation.  Nothing in this Consent Decree shall be construed to affect or limit in any way the obligations of Pratt to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

36. **Force Majeure.**  Where Pratt cannot comply with a deadline or requirement of this Consent Decree because of natural disaster, epidemic or pandemic (including but not limited to delays occasioned by COVID-19), war, terrorist attack, strike, riot, judicial injunction, or other, similar unforeseeable event or delay that was not caused by the negligence or willful misconduct of Pratt and that could not have been avoided by Pratt through the exercise of due care, Pratt shall inform Baykeeper in writing within a reasonable time, not to exceed fourteen (14) days, after obtaining knowledge of such fact and request an extension or modification of the deadline or requirement.  Pratt shall include in such application the measures taken to prevent and/or minimize any delays.  The Parties agree to meet and confer in good faith concerning the non-compliance and, where the Parties concur that performance in accordance with such deadline or requirement was not attainable due to the particular force majeure event, despite the timely good faith efforts of Pratt, new performance deadlines shall be established.  If the Parties cannot timely agree upon the terms of such a stipulation, either shall have the right to seek intervention of the Court pursuant to Section X.  Pratt shall have the burden of proving that an event is a defense to a claim of non-compliance with this Consent Decree pursuant to this subparagraph.

## VIII.   FEDERAL REVIEW OF DECREE

37. **Review by Agencies.**  The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Decree by the Agencies. Therefore, upon signing of this Consent Decree by the Parties, Baykeeper shall serve copies of this Consent Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.  If for any reason the United States should

decline to approve this Consent Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Consent Decree raised by the United States.

38. **Entry of Order.** Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties shall move the Court for entry of this Consent Decree. This Consent Decree shall take effect on the date it is entered by this Court and shall terminate three (3) years from when it is entered by the Court. If for any reason the Court should decline to approve this Consent Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

## IX. MODIFICATION AND ENFORCEMENT OF CONSENT DECREE

39. **Modification in Writing.** This Consent Decree may be modified only upon written consent of the Parties and the approval of the Court, provided however that the Parties may make modifications upon mutual agreement, in writing, to the deadlines imposed under this Consent Decree and to the plans outlined in Exhibits A, B, and C.

40. **Continuing Jurisdiction of the Court.** The United States District Court for the Eastern District of New York shall retain and shall have jurisdiction over the Parties to this Consent Decree for the resolution of any disputes that may arise under this Consent Decree. This Court shall also allow this action to be reopened for the purpose of enabling the Parties to this Consent Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Consent Decree.

## X. DISPUTE RESOLUTION PROCEDURE

41. **Meet and Confer.** Any disputes with respect to any of the provisions of this Consent Decree shall be, in the first instance, the subject of informal negotiations between the Parties affected by the dispute to attempt to resolve such dispute.

42. **Motion.** If a dispute between the Parties cannot be resolved by informal negotiations, a Party may file a motion with the Court seeking resolution of the dispute. The motion shall set forth the nature of the dispute and a proposal for its resolution. The other Party shall have thirty (30) days to respond to the motion and propose an alternate resolution. The party making the motion shall represent to the Court that it has notified the other Party of the dispute and attempted in good faith to resolve the dispute prior to bringing the motion.

43. **Notice.** The moving Party shall provide the other Party with seventy-two (72) hours' written notice prior to initiating court proceedings to enforce this Consent Decree.

44. **Fee Awards.** In resolving any dispute arising from this Agreement, the Court shall have discretion to award attorneys' fees and costs. The relevant provisions of the Clean Water

Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Court.

## XI. MISCELLANEOUS PROVISIONS

45. **Entire Agreement.** This Consent Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements, and understandings, whether oral or written, among the Parties.

46. **Notices.** Any notice, demand, copies of documents, or other communications required to be made under the provisions of this Consent Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing. Notices shall be directed to the Parties at their respective mailing and email addresses set forth below. Notices given in the foregoing manner shall be deemed given: (a) if delivered by courier, when actually received or refused by the addressee; (b) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs; or (c) when acknowledged by the addressee of the email copy. Each Party shall promptly notify the other Party of any change in this contact information, including but not limited to a change in representation.

| Notices for Baykeeper shall be sent to: | Notice for Pratt shall be sent to: |
|---|---|
| Edan Rotenberg<br>edan@superlawgroup.com<br>and<br>Julia Muench<br>julia@superlawgroup.com<br><br>Super Law Group, LLC<br>180 Maiden Lane, Suite 603<br>New York, NY 10038<br><br>Notices sent to the individuals listed above at the addresses listed above shall be deemed as notice to Plaintiff. | Doug Balyeat<br>Pratt Industries<br>3535 Piedmont Road,<br>Building 14, Suite 440,<br>Atlanta, GA 30305<br>dbalyeat@legal.prattindustries.com<br><br>and<br><br>R. Todd Silliman<br>Dentons US LLP<br>303 Peachtree Street, NE, Suite 5300<br>Atlanta, GA 30308<br>todd.silliman@dentons.com<br><br>Notices sent to the individuals listed above at the addresses listed above shall be deemed as notice to all Pratt. |

47. **Authorization.** Each person signing this Consent Decree represents and warrants that s/he has been duly authorized to enter into this Consent Decree by the Party on whose behalf it is indicated that the person is signing.

11

48. **Successors and Assigns.**  This Consent Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, and assigns (to the extent that successors or assigns own or operate an industrial facility subject to the General Permit at 4435 Victory Boulevard, Staten Island, NY 10314).

49. **Transfer of Ownership.**  Pratt shall notify Baykeeper prior to any transfer of ownership or control of the Facility to a non-Party.

50. **Interpretation.**  The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Consent Decree, but shall be construed as if all Parties prepared this Consent Decree, and any rules of construction to the contrary are hereby specifically waived.  The terms of this Consent Decree were negotiated at arm's length by the Parties hereto. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

51. **Headings.** The section and paragraph headings contained in this Consent Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Consent Decree.

52. **Counterparts.**  This Consent Decree may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. The Parties authorize each other to detach and combine original signature pages and consolidate them into a single identical original.  Any one of such completely executed counterparts shall be sufficient proof of this Consent Decree. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.  Copies of the original Consent Decree, whether transmitted by facsimile or other means, shall be effective.

53. **Severability.**  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

54. **Changes to the General Permit.**  Pratt will comply fully with the General Permit and any permit modification, individual permit, or General Permit reissuance applicable to the Facility during the Term of this Consent Decree.  If new or revised benchmark monitoring cutoff concentrations or effluent limitations (numeric or non-numeric) become applicable, any exceedance of a new or modified benchmark monitoring cutoff concentration or effluent limitation will have the same effect as any exceedance of an existing benchmark monitoring cutoff concentration or effluent limitation, respectively.

XII.   **EXHIBITS**

55. The following exhibits are attached to this Consent Decree and made a part hereof:

Docket [21-2, 21-3, 21-4] are incorporated here by reference /BMC

    a. Exhibit A: Stormwater Pollution Prevention Plan ("SWPPP")
    b. Exhibit B: Engineering Report
    c. Exhibit C: Corrective Plan

Dated: 9/1/2021

Pratt Paper (NY) Inc.

By: Stephen Ward
Title: Chief Financial Officer

Dated: _____

Raritan Baykeeper, Inc.

By: _____
Title: _____

ENTERED and DATED this 13th day of October, 2021

Digitally signed by Brian M. Cogan

Honorable _____
United States District Judge

55. The following exhibits are attached to this Consent Decree and made a part hereof:

   a. Exhibit A: Stormwater Pollution Prevention Plan ("SWPPP")
   b. Exhibit B: Engineering Report
   c. Exhibit C: Corrective Plan

Dated: _____     Pratt Paper (NY) Inc.

_____
By:
Title:

Dated: September 1, 2021     Raritan Baykeeper, Inc.

_____
By: Michele Langa, Esq.
Title: Staff Attorney

ENTERED and DATED this ____ day of _____, 2021

_____
Honorable _____
United States District Judge

13